[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff commenced this action by a complaint dated March 26, 1992. The defendant appeared by counsel on April 29, 1992, and on July 20, 1992, filed an answer to the complaint and a special defense. The plaintiff filed a Reply to the defendant's Special Defense, dated July 22, 1992. On March 10, 1992, the plaintiff claimed the matter to the court side trial list.
This matter arose out of a fall inside the defendant's supermarket on Reidville Drive, Waterbury, Connecticut, on Good Friday, April 13, 1990, at approximately 10:00 a.m. The plaintiff testified that she was driven to the defendant's store by her husband, who remained in the car while she went into the said store to purchase clams. She was wearing Reebok sneakers and carrying the clams in her hand with a small pocketbook over her shoulder when she was looking for lemons while in said store. She was directed to the aisle where the lemons were and as she was walking in the dairy aisle, she was caused to slip by spillage from a quart container of cottage cheese with pineapples. The plaintiff stated all she knew was that she went up in the air and fell on her right knee and right shoulder. She testified that two employees of the defendant came to her assistance. She later learned they were Bob Lockwood and David Hira. One of them cleaned the cottage cheese off of her sneakers and the other cleaned up the spillage. The plaintiff stated one of said employees was stocking the shelves and should have seen the cottage cheese on the aisle. After she fell, the plaintiff filled out an accident report form of the defendant. Sometime later in the day, the plaintiff's knee was causing her great pain, so she called Dr. Richard Matza, an orthopedic surgeon. However, he was away. She then called Dr. Cheryl Schiano, a chiropractor, who saw her that day. On April 17, 1990, she was still having problems, and she went to the Emergency Room at Waterbury Hospital. She was treated there and told to see Doctor Matza. She saw Doctor Matza on April 20, 1990 for her injuries sustained in the aforementioned fall.
The plaintiff had been treating with Doctor Matza for many years prior to April 13, 1990, for back and knee problems. The plaintiff injured her right knee when she fell on a candy wrapper in a store on October 6, 1985. As a result of that fall, she treated with Doctor Matza and he gave her a fifteen (15%) percent disability to the right knee. The plaintiff also had back operations CT Page 5167 in 1976 and 1980. For the past two years, the plaintiff has been collecting Social Security disability, mainly as a result of her back problems. The plaintiff has had three arthroscopic surgeries on her right knee, namely on August 22, 1985, November 6, 1986 and November 12, 1992. On March 7, 1990, a month prior to this fall, the plaintiff had seen Doctor Matza for back pain and pain in the right knee. Doctor Matza testified that as a result of this fall, the plaintiff sustained a sprain of her right shoulder and an acceleration of the degeneration in her right knee. As a result of this fall, Doctor Matza gave the plaintiff an additional twenty (20%) percent disability of the right knee. He stated the plaintiff now needs a complete knee replacement. Prior to this fall, that was the long term prognosis. He stated that prior to this fall, in his opinion, the plaintiff would have needed a complete knee replacement in approximately twenty-five (25) years. However, the fall on April 13, 1990 accelerated that time so that in his opinion, she needs a complete knee replacement at this time. However, because of her young age, forty-six (46), he does not recommend it at this time. He testified the cost of reconstructive knee surgery is approximately $25,000.00. He also testified a knee replacement is only good for about ten (10) to twelve (12) years, so that if such surgery was done at this time, except for a complete knee replacement if the same is needed. He stated the plaintiff should lose significant weight and become involved with a formalized physical therapy program. The plaintiff's medical bills incurred as a result of this fall total $9,773.09, of which $3,468.00 have been paid by third parties, leaving a balance due of $6,305.09.
However, before the court can consider damages it must determine the liability issue. The plaintiff was a business invitee to the defendant's store. Richard Stremme, who was the store manager at the defendant's store on Reidville Drive when this fall occurred, testified that the defendant's policy was that the store was swept usually at 12 noon, 3 p. m., 6 p. m. and 9 p. m. Also, he stated that a cleaning crew worked to clean the store prior to its opening each day. In addition, he testified that all spillages were to be cleaned as soon as they were seen or brought to an employee's attention. As a business invitee, the defendant owed the plaintiff a duty to keep its premises in a reasonably safe condition. Gulycz v. Stop Shop Companies, Inc., 29 Conn. App. 519,521. If that duty was breached and if the defendant had actual or constructive notice of the defect (spillage) within a reasonable time to remedy it, the plaintiff will be entitled to recover damages for her injuries. No one could testify how long CT Page 5168 the cottage cheese was on the aisle floor before the plaintiff fell. The plaintiff produced no evidence to establish that the the plaintiff would need another one or two more such operations in her lifetime. He stated another consideration relative to knee replacement surgery will be how long the plaintiff can stand the pain in her knee. When she reaches a point where she can no longer handle the pain, the operation will have to be performed. Presently, Doctor Matza recommends that the plaintiff do certain exercises, use a cane when necessary, and take pain killing medicines as needed. The plaintiff's activities are very much restricted at this time due to her knee and back condition.
Dr. Robert Ferraro testified for the defendant. He examined the plaintiff on January 5, 1393, for one hour and five minutes. He testified that the fall on April 13, 1990 was a temporary exacerbation of a prior injury in her right knee. He stated that the changes Doctor Matza found in the plaintiff's right knee when he performed arthroscopic surgery on said knee on November 12, 1992 would have been present even if the plaintiff had not fallen on April 13, 1990. He stated the plaintiff has significant degenerative arthritis in the three compartments of the knee which she had for years prior to this fall. He testified that the plaintiff suffered no new damage to her right knee as a result of the fall on April 13, 1990. He further stated that the plaintiff does not need reconstructive knee surgery at this time, but that she will in the future. He agreed she is far too young for such surgery at this time. He recommended that the plaintiff have no more surgery defendant had actual notice of the alleged cottage cheese spillage. Whether the defendant had constructive notice of this condition turns on whether the condition existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the spillage in time to have remedied it prior to the plaintiff's fall. Ibid. David Hira, who was the manager of the defendant's Dairy Department at the subject store on April 13, 1990, testified that he was stocking the shelves at the time of the accident. He testified he came out of the stock room with a truck full of milk to be put on shelves and he saw the plaintiff on the aisle floor. He stated he and another employee, Bob Lockwood, immediately assisted the plaintiff. He saw the cottage cheese on which the plaintiff fell at that time. He also stated that just prior to that he pushed his truck into the back room to get more milk to put on shelves and that he was in the back room for probably two minutes only. He testified that he had not seen such spillage on his way back into said back room. He then came out of said room with a truck load of milk, and saw the CT Page 5169 defendant on the floor. He testified he passed within approximately twenty (20) feet of where the spillage occurred on his way into the back room. He stated that there were not many people in the store, but that there were a few customers in that area of the store at the time. While an abundance of evidence is not necessary to show a sufficient length of time existed for discovery of a condition, some evidence is required. Ibid.
After hearing all the evidence, the court finds that the plaintiff has not sustained her burden of proof on the notice issue. On the facts presented, this court cannot find that the defendant had either actual or constructive notice of the spillage of cottage cheese in its store when and where the plaintiff fell on April 13, 1990. Therefore, the court finds the issues for the defendant on the plaintiff's complaint.
Judgment may enter accordingly.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN